O'NEAL *v.* RICHARDSON.

Opinion delivered March 3, 1906.

1. INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—In examining instructions for the purpose of ascertaining whether they be correct, they should be considered in connection with other instructions upon the same subject. (Page 136.)

2. INSTRUCTION—PROVINCE OF JURY—PREJUDICE.—While it was improper for the trial judge to say to the jury: "It is necessary for all of you, or some of you, to make concessions. I hope you will go out now with a view to getting a verdict"—such a charge was not preju-

dicial where the jury retired and remained out some time, and then returned into court and reported that they were unable to agree, and the court then gave them an additional instruction, whereupon they reached a conclusion. (Page 137.)

3. SAME—REDUCTION TO WRITING.—It is only at the request of a party that the judge is required to reduce his instructions to writing. (Page 137.)

Appeal from Lawrence Circuit Court; *Frederick D. Fulkerson,* Judge; affirmed.

*S. D. Campbell,* for appellant.

1. Instructions 3, 4, 5 and 6 were erroneous. Kirby's Digest, §§ 529, 530; 64 Ark. 244.

2. The court erred in orally instructing the jury that they must make concessions. 58 Ark. 282; 60 Ark. 49.

3. The court erred in orally instructing the jury over appellant's objection. 71 Ark. 367.

*H. L. Ponder* and *Jno. W. & Jos. M. Stayton,* for appellee.

1. Instructions are to be construed together, and, when taken together, if the matter is fairly submitted to the jury, the verdict will not be disturbed, though one be inapplicable or misleading. 48 Ark. 396; 37 Ark. 238; 21 Ark. 357; 59 Ark. 422; 58 Ark. 353. Error that is not substantial and prejudicial is no ground for reversal. 8 Ark. 313; 27 Ark. 306; 43 Ark. 535; 51 Ark. 132; 59 Ark. 431. A judgment, right on the whole record, will not be reversed for error appearing in the record. 10 Ark. 9; 23 Ark. 115; 4 Ark. 525; 14 Ark. 114; 19 Ark. 96; 2 Ark. 115; 21 Ark. 469; 23 Ark. 121; 24 Ark. 326, 587; 26 Ark. 373; 44 Ark. 556; 43 Ark. 296; 46 Ark. 542, and numerous other citations.

2. It was proper for the trial judge to make plain the duty resting on the jury to agree, if possible, on a verdict. 60 Ark. 49.

3. Appellant can not now complain that an instruction was given orally which he did not ask to be reduced to writing.

BATTLE, J. L. E. O'Neal brought this action against V. G. Richardson and J. M. Jackson, partners doing business as Richardson & Jackson, to recover the possession of certain twenty-three bales of cotton. Richardson and Jackson answered, and denied that the cotton belonged to O'Neal, and alleged that the cotton was their property, and that they had sold the same to

Lesser-Goldman Cotton Company and the Planters Compress Company. These companies, purchasers, intervened and claimed to be the owners, and entitled to the possession of the cotton.

Richardson & Jackson were operating a round-bale cotton gin, and in order to operate the same it was necessary to buy seed cotton to furnish the gin. They were without sufficient means to continue the operation of the gin, and applied to O'Neal for assistance; and finally entered into an agreement with him, under and in pursuance of which O'Neal claims that all the cotton ginned by Richardson and Jackson was purchased by and belonged to him, and that when it was ready for shipment he sold it to them, and that under this agreement and arrangement the cotton in controversy was purchased by him, but never was sold to them, and still belongs to him.

Richardson & Jackson say that they had $350, and that, under the agreement with O'Neal, he signed a note for $350, as surety, and they borrowed on it $350, and this and the other $350, making $700, were placed in his hands for the purpose of paying for the cotton to be purchased by them; that he acted as their cashier, and in pursuance of said agreement, and for his protection against any losses on account of being their surety, paid with their money for the cotton purchased for the gin, and received the proceeds of the sale of the cotton sold by them, and with such proceeds paid for other seed cotton; and in this manner the gin was kept in operation. He was to receive compensation for his services. They further say that the cotton in controversy was purchased by them and sold to interveners, and that O'Neal "had nothing to do with it."

Each party adduced evidence in the trial in the action which tended to support his or their contention. Evidence was also adduced which tended to prove that the interveners were purchasers of the cotton in controversy for a valuable consideration without notice of any lien thereon.

Over the objections of the plaintiff the court instructed the jury as follows:

"3. If you find from a preponderance of the evidence herein [that], in order to secure the means to run their gin, the defendants, Richardson & Jackson, induced the plaintiff to go upon their notes to the bank for money and to make advances to them from

time to time, [that] they agreed [that] the plaintiff should hold all funds received by defendants, *and [that] all cotton shipped or sold by them was delivered to plaintiff by the delivery of the bills of lading therefor,* and [that] the plaintiff was to be repaid his advances and for the money borrowed on his name, and he was to receive a compensation therefor, such an arrangement would not confer the title of the cotton upon the plaintiff.

"4. If you find, from a preponderance of the evidence herein, [that] the defendant requested O'Neal to become their surety to the bank, and the defendants further gave him certain sums of money, and [that] it was further agreed [that] he should hold the money and disburse the same for seed cotton for them, and hold the bills of lading therefor and collect the proceeds of sale and repay his advances, and was later on to receive compensation for services rendered, such an arrangement would not be sufficient to give such a title to the plaintiff as would entitle him to recover in this suit, and you should find for the interveners.

"5. If you find from the evidence that the plaintiff was not the absolute owner of the cotton in controversy, but was to hold the same or proceeds thereof until he was made safe or repaid for advances made by him, such would not be sufficient, but the cotton must have been actually delivered to him; and if you find the cotton in controversy was bought and ginned in the ordinary course of business, and the same was never delivered to O'Neal, he can not sustain his action against the interveners, and you will find for the interveners.

"6. If you further find from the evidence that O'Neal became surety for Richardson & Jackson to the Bank of Newport for $350, and that he was to have a lien upon the cotton that was ginned by Richardson & Jackson, in case the said note became due and O'Neal had it to pay, this would not prevent a recovery of the cotton in controversy by the interveners and the Lesser Cotton Company, unless you further find that said Lesser Cotton Company bought said cotton with notice of said lien."

After the case was submitted to the jury, and they had been out sometime, and had returned into court, being unable to agree, the court stated to them: "Of course, it is necessary for all of you, or some of you, to make concessions. I hope you will go

out now with a view to getting a verdict." To this statement of the court the plaintiff at the time objected and excepted. They retired to their room, and after they had been out sometime they again returned into court, *being unable to agree,* and the court instructed them orally as follows: "Gentlemen, these instructions mean about this: If there was an agreement between Richardson & Jackson on one side and O'Neal on the other that O'Neal should buy cotton from the wagon, and own it for himself, and then to turn it over to them to gin, and then they would buy it from him, then the title was not to pass to Richardson & Jackson until after it was ginned and baled, then O'Neal would be the owner, and Richardson & Jackson would have no right under any circumstances, in such an event, to sell the cotton, either to innocent holders or any one else. On the other hand, it means about this: That if O'Neal was buying this cotton for Richardson & Jackson, and that he just had a lien on the cotton, and on the fund for what he had advanced and his security to the bank, if he was a security, then that would be Richardson & Jackson's cotton, and they have violated their agreement; the title would pass to Lesser Cotton Company, and be a better title than O'Neal's lien, unless they had notice of that kind of an agreement. That is all there is in it. The question is whether or not O'Neal absolutely owned it, or whether he had a lien, or such a lien as the Lesser Cotton Company had no notice of. I also instruct you that the fact that there had been no settlement as to the wages of O'Neal or a settlement, on the other hand, as to what he was to pay for ginning, that would not determine the issue in this case. It is only a question to be looked at. The mere fact that they had not settled the pay for ginning, if he was the owner, or the fact that they have not settled as to what he was worth as security—that doesn't necessarily settle it. In fact, there has been no settlement."

To the oral instructions the plaintiff objected and excepted. Thereupon the jury retired, and after being out sometime returned a verdict in favor of the interveners. Plaintiff appealed.

In examining instructions for the purpose of ascertaining whether they be correct, they should be considered in connection with other instructions upon the same subject. The instructions

numbered 3, 4, 5 and 6, to which appellant objected, were explained by the oral instruction. As explained, they contain no reversible error. See *Hauselt* v. *Harrison,* 105 U. S. 401, 405.

The statement of the court to the jury as to the necessity of making concessions was improper, but it does not seem that it was prejudicial. After it was made they retired and remained out some time, and then returned into court and reported that they were unable to agree, and did not agree until the oral instruction was given. Under the statement and instructions then given to them the jury were unable to agree. The statement yielded no results.

Appellant insists that the court erred in orally instructing the jury. He objected to it as he did to written instructions, but there was no request or demand that it be reduced to writing. It is only at the request of either party that a court is required to reduce instructions to writing. Constitution, art. 7, § 23.

The evidence was sufficient to sustain the verdict.

Judgment affirmed.